DAWKINS, J.
Mrs. Anna M. Wilkinson, wife of Joseph R. Macheca, alleging herself to be resident of the city of New York, filed in the proceedings of the above-styled succession a petition bearing the same docket number, and in which she alleged that she had obtained against her said husband, in the courts of New York, a judgment of separation and for alimony, amounting at the time of this proceeding to the sum of $3,000; that her said husband was a nonresident of the state of Louisiana, and his whereabouts unknown; that he had. avoided the processes of the New York courts, and she had therefore been unable to collect anything on said judgment; that Mrs. Margeret Macheca, mother of her said husband, had died, leaving in this state a considerable estate to her heirs, one of whom was the said Joseph R. Macheca, and that he and his brother, John O. Macheca, had been appointed as executors thereof, without bond, and were legally in charge of, its property and assets; and that there is and will be coming to her said husband, from his said mother’s estate, a sum or *167 sums more than sufficient to satisfy her said judgment obtained in the state of New York. She also further alleged as follows:
“(12) Petitioner further represents that she fears and believes, and therefore avers, that the heirs may take possession of the assets of said succession; that the said Joseph R. Macheea, during the pendency of this action, may convert his interest and share as an heir of his said mother into cash, or in such other form as may be easily concealed or removed and remove the same out of this state, for the purpose of frustrating the collection of said judgment and decree in favor of petitioner above recited; that petitioner knows of no ,other property belonging to defendant than his interest in the estate of his said mother, and that her only hope and opportunity of having the said judgment in her favor paid or discharged is by and through the share and interest enjoyed by the said Joseph R. Macheea in the estate of his said mother.
“(18) Petitioner further represents that it lies within the power of the said Joseph R. Macheea, defendant herein, to conceal, part with, or otherwise dispose of the movables and other assets in his possession representing his share and interest in his mother’s estate during the pendency of this suit, and that she fears that he will so conceal, part with, or dispose of said property.
“(14) Petitioner reserves all her rights and claims for alimony which may accrue hereafter under the terms of said decree.
“(15) Now petitioner represents that she is advised and believes, and therefore avers, that said judgment of said Supreme Court of the state of New York, as far as alimony accrued to date is concerned, is final, executory, and absolute, and is protected by the ‘full faith and credit clause’ of the federal Constitution,, and that the duty is imposed upon the courts of this and other states to give full effect to said judgment and to such rights and remedies for its enforcement and collection as are provided by the laws of New York and this state; and petitioner relies on and pleads the benefit of the provisions of said Constitution.
“(16) Petitioner further represents that in her opinion and belief, in the protection of her rights, a writ of judicial sequestration is necessary (without bond) directed to the civil sheriff for the parish of Orleans, directing and commanding him to seize and sequester, and take into his possession, the entire right, title, and interest of the said Joseph R. Macheea in the succession and estate of his said mother, Mrs. Margeret Macheea, widow of the late John Macheea, No. 128851 of the docket of this court, notification of such Seizure to be made by service upon John Macheea and Joseph R. Macheea, the executors of her estate, or either of them. In the alternative, petitioner is entitled to an order and decree directing and ordering the executors of said succession to retain and hold in their hands, subject to the' further orders of this court, such part of the estate of said Mrs. Margeret Macheea as maybe coming by law or by the terms of her said will to Joseph R. Macheea.”
Petitioner prayed that she be authorized to prosecute this suit for' citation upon her said husband, and for judgment against him in her favor for the amount claimed with interest; that a writ of judicial sequestration issue without bond for the seizure of all the interest of her said husband in his mother’s succession; that notice be served upon the said executors, or, in the alternative, that they be ordered to retain in their hands, subject to the further orders of the court, such part of said estate as might be coming to her said husband; that the writ be maintained; that the property and its proceeds be applied to the satisfaction of her said demand as a first lien and by priority; and that, in due course, a receiver be appointed to administer the property so seized.
Upon this petition the court below issued a judicial sequestration, without bond, as prayed for, directing the sheriff to seize the interest of the said Joseph R. Macheea in his said mother’s succession, that notice be given the executors, and the seizure was accordingly made.
Thereupon the executors, through counsel, appeared and moved to dissolve the said writ: First, upon the ground that the petition had been filed without authority from the petitioner ; and, second, that the pleading, upon its face, showed that it had been issued without the authority of law. This rule or motion was met by an exception of the petitioner, Mrs. Anna M. 'Wilkinson, in which it was set *169 up that the executors were without right or cause of action to plead in defense the matters and things set forth in said motion to dissolve, for the reason that said defenses were personal to the said Joseph R. Macheca.
The latter exception — that is, the one filed by the petitioner to the motion to dissolve the writ of sequestration — was sustained, the motion to dismiss was denied, and the executors applied to this court for writs of certiorari, prohibition, and mandamus. On this application we ordered the record up upon certiorari, and the proceedings are now before us for review.
Opinion.
Aside from the allegation in the motion to dissolve the writ of judicial sequestration charging that the petition herein had been filed without the authorization of the said Mrs. Anna M. Wilkinson, the said motion, in effect, amounts to an exception of no cause of action and of no right of action; while the exception taken by the petitioner to this motion to dissolve merely calls in question the right of the executors to urge the matters set forth in the latter pleading, on the ground that they are personal to the defendant Joseph R. Macheca. In order for us to determine the question of the right of the executors to urge these defenses, it is necessary for us to analyze somewhat the situation and issues presented by the pleadings.
[1,2] The petition presents the case of a foreign creditor seeking to have rendered ex-ecutory a judgment of another state against a debtor who, according to the allegations, is a nonresident of this state. There are only two ways known to the law by which a creditor can obtain an executory decree upon a moneyed claim against his debtor, first, by personal citation, and second, by a proper seizure of his property (Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565); and, in the absence of both of these methods of acquiring jurisdiction, the court is wholly without power to grant relief of any character. There was no personal service on the defendant Macheca in' this case, as is shown by the return of the sheriff reciting that he could not be found and according to information received that the defendant resides out of the state. Hence the motion to dissolve raises, not alone the question of the validity of the seizure because of informalities or defenses personal to the defendant, but as affecting the jurisdiction of the court. If the executors are to give up any part of the estate held by them, in their capacity as such, they are entitled to insist that it shall be done as the result of a judgment or decree that will discharge or protect them as against the defendant, heir, when he may later call for it; otherwise, if they part with it under a proceeding which is absolutely null, and in which the court has no jurisdiction whatever, without urging such exceptions as would plainly preclude that result, it might well be that the heir could hold them personally for the loss. Conceding, therefore, as contended by counsel for Mrs. Wilkinson, that the executors are mere stakeholders and without interest to raise any issue affecting the merits of the case as between plaintiff and her husband, they at least have the right to question the power or jurisdiction of the court to issue the writ by which the property in their possession has been seized. Camutz, Syndic, v. Bank, 26 La. Ann. 354.
Effect of Foreign Judgment.
[3, 4] Prior to 1846 article 746 of the Code of Practice read as follows:
“When a creditor has obtained against his debtor a judgment having the force of res judicata, in a tribunal different from that in which he seeks execution, whether the judgment was rendered in this state or another state of the Union, or in a foreign country, he may, *171 on this ground, proceed by executory process, and cause to be seized and sold the property of his debtor, without previous citation, in the same manner as on privilege or mortgaged debts, contained in acts importing confession of judgment, except in the case mentioned in the following article.”
In that year the Legislature passed an act repealing that portion of said article which gave such effect to judgments of the other states and of foreign countries in this language, to wit:
“So much of articles 746 and 747 of the Code of Practice as authorizes a creditor having obtained judgment in another state of this Union, or in a foreign country, to proceed by executory process' of said judgment, be, and the same is hereby repealed.”
Since this enactment it has been uniformly held that the only method of procedure is by ordinary action, accompanied by citation and service, or by the seizure of the debtor’s property. Turley v. Dreyfus, 33 La. Ann. 887; Id., 35 La. Ann. 510. The intention of the law-writer was thus made too plain to admit of doubt.
Article 116 of the Code of Practice provides:
“If the minor, against whom ■ one intends to institute a suit, has no tutor, the plaintiff must demand that a curator ad hoc be named to defend the suit. The same courbe must be pursued if the person intended to be sued be absent and not represented in the state, or, in partition or expropriation suits, if it be made to appear by affidavit that the residence of the defendant is unknown to plaintiff.”
To this provision of the law, of course, must be added the requirement, cited above, that the property of the absentee must be seized, or brought within the grasp or jurisdiction of the court, in the proceeding which the plaintiff provokes, save in those exceptional cases where rights affecting real estate, a succession (in which the party claims some right as heir or creditor of the estate), partnerships, etc., are involved.
Even in the jurisdiction where it is rendered, a judgment creates as a rule a lien only upon the real property of the debtor, unless by contract, or some special provision of law, it is made to apply to personalty. Such is the law in this state.
“Although a judgment in personam has the effect of establishing a claim against the defendant which follows his person and may be enforced against him, by some appropriate proceeding, wherever he may be found, yet it can be collected by the direct process of execution only within the territory over which the court rendering the judgment has jurisdiction and within which its process may run. Hence, as a general rule, the judgment constitutes a lien only upon the real estate of the debtor lying within such territorial limits. A judgment rendered in one state or county is not a lien upon land in another state or county. In order to have that effect, it' must be made the basis of a suit and judgment in the second state or county, and then the lien will attach as an incident of the second judgment, not the first.” Black on Judgments (2d Ed.) p. 655, § 417; Reynolds v. Stockton, 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464.
Under the Oivil Code, judgments of this state become liens upon immovable property only (article 3328) from the date of recordation (articles 3321 and 3322).
“Mortgages result from the judgment rendered in other states of the Union or in foreign countries, only in so far as the execution has been ordered by a tribunal of this state, in the manner prescribed by law.” C. C. art. 3326.
We are compelled to conclude, therefore, that Mrs. Anna M. Wilkinson enjoyed no lien or privilege upon the property of her husband, real or personal, in this state, by virtue of the judgment rendered in New York, and that none could have been acquired upon her claim, based on said foreign judgment, except by proceeding in the ordinary way to obtain a decree of the courts of this state and placing the same of record in the parish where the property of the defendant was located. Even then the lien would attach to the realty only.
*173 Bight to Sequestration.
[5, 6] Article 144 of the Code of Practice igives to the courts the power to issue conservatory writs, including sequestration, in the manner specially provided in subsequent articles; and article 145 also empowers them to enact rules of procedure not contrary to the said provisions. We must therefore look to it (Code of Practice) as the authority for issuing a writ of sequestration.
Article 269 defines sequestration as follows:
“Sequestration is a mandate of the court, ordering the sheriff in certain cases, to take into his possession and to keep a thing of which another person has the possession, until after the decision of a suit, in order that it be delivered to him who shall be adjudged entitled to have the property or possession of that thing. [Italics ours.] This is what is properly called a judicial sequestration.”
Articles 270, 271, and 272 distinguish between sequestration and deposit, and declare that any species of property may be seized, including obligations and titles, “when their ownership is in dispute,” and in article 273 the Code of Practice further recites:
.“Judicial sequestration is generally ordered only at the request of one of the parties to a suit; there are cases, nevertheless, where it is decreed by the court without such request, or is the consequence of the execution of judgments.
“The rules relative to the sequestration in consequence of the execution of judgment, will be found in the chapter which treats of the ex- \ ecution of judgments.”
“Art. 274. The court may order, ex officio, the sequestration of real property in suits, where the ownership of such property is in dispute and when one of the contending parties does not seem to have a more apparent right to the possession than the other. In such cases, sequestration may be ordered to continue until the question of ownership shall have been decided.”
The cases in which the parties themselves may invoke the writ are laid down in the next article as follows:
“Art. 275. Sequestration may be ordered at the request of one of the parties in a suit, in the following cases:
“1. When one, who had possessed for more than one year, has been evicted through violence, and sues to be restored to his possession.
“2. When one sues for the possession of movable property, and fears that the party having possession may send the property in dispute out of the jurisdiction of the court during the pendency of the suit.
“3. When one claims the ownership or the possession of real property, and has good ground to apprehend that the defendant may make use of his possession to dilapidate or to waste the fruits or revenues produced by such property, or convert them to his own use.
“4. When a woman sues for a separation from bed and board, or only for a separation of property from her husband, and has reason to apprehend that he will ruin her dotal property, or waste the fruits or revenues produced by the same, during the pendency of the action.
“5. When one has petitioned for a stay of proceedings and a meeting of his creditors, and such creditors fear that he may avail himself of such stay of proceedings to place the whole or a part of his property out of their reach.
“6. A creditor by special mortgage shall have the power of sequestering the mortgaged property, when he apprehends that it will be removed out of the state before he can have the benefit of his mortgage, and will make oath of the facts which induced his apprehension.
“7. The plaintiff may obtain a sequestration in all cases where he has a lien or privilege on property, upon complying with the requisites provided by law.
“8. A sequestration may be ordered in all cases, when one party fears that the other will conceal, part with, or dispose of the movable in his possession, during the pendency of the suit, upon complying with the requisites of the law.”
The writ may also issue in any case where the right is expressly granted, by law. Levois v. Gerke, 12 La. Ann. 829; Tufts & Hobart v. Casey, 15 La. Ann. 258.
Taking up the definition of sequestration as given in the article 269, first above quoted, it would seem that the lawmaker intended that it should be used primarily in aid of claims to the ownership or possession of property; but in the seventh paragraph of the article 275 the right is also clearly accorded where one claims a lien or privilege. This idea also runs throughout the last-men *175 tioned article, save paragraphs 4 and 5, and the last or paragraph No. 8 which we shall discuss further in this opinion. This is true also of the articles 273 and 274, giving to the judge the power to issue the writ of his own motion; and we have been unable to find any provisions, either in the Codes or in the statutes, which accord the court this right, except where the sequestration is the consequence of the execution of a judgment.
It is not pretended that the petitioner in this case was entitled to the writ of sequestration under' any special statute. On the contrary, the allegations in support of the application, therefor follow almost literally the words of paragraph 8 of the article 275. The inquiry therefore arises: Does this paragraph give to one claiming neither the ownership, nor possession, nor lien or privilege, nor the benefit of any special statute, the right to invoke the writ?
The paragraph in question was added to article 275 of the Code of Practice by Act No. 53 of 1839, in which a number of other articles were amended, by the use of the following language:
“Sec. 6. Be it further enacted, etc., that article two hundred and seventy-five of said Code be so amended, that, in addition to the cases therein mentioned, a sequestration may be ordered in all cases, when one party fears that the other will conceal, part with, or dispose of the movable or slave in his possession, during the pendency of the suit, on complying with the requisitions (requisites) of the law.”
The word “slave” was omitted from the Code of 1870, and “requisition” ¡was corrected so as to read “requisites.”
It would seem reasonably clear that the only purpose of this amendment was to give the right to the writ when the ownership of a movable in the possession of the defendant was in dispute, for the other paragraphs had given it in all other cases where the possession of personal property, the possession and ownership of real property, or a lien and privilege were claimed. To illustrate: Paragraph No. 1 unquestionably has reference to the possession of real property; No. 2 to the possession of movable property; No. 3 to the ownership or possession of real property; No. 4 to the claim by a married woman for the ownership and possession of either movable or real property; No. 5 to a case where a debtor seeks to take advantage of a stay of proceedings to place his property beyond the reach of his creditors; No. 6 to the holder of a special mortgage; and No: 7 to those claiming a lien' or privilege on property (apparently movable or immovable). Any other conclusion would appear to be hostile to the definition and evident purposes of the writ of sequestration. Baer v. Kopfler, 19 La. Ann. 194; Shropshire v. Russell; 2 La. Ann. 961; Barriere & Bro. v. Feste, 9 La. Ann. 535; Bank v. Childs, 49 La. Ann. 1359, 22 South. 384; Bank v. Bank, 28 La. Ann. 97; Welton v. Burton, 27 La. Ann. 448; Vale v. Stevenson, 23 La. Ann. 143; 35 Cyc. 1390 and 1392. See, also, Dumonteil et al. v. Dubroqua, 1 Rob. 531; Gumbel & Co. v. Beer et al., 36 La. Ann. 484; Daugherty et al. v. Vance, 30 La. Ann. 1246.
Petitioner not having brought her claim within the provisions of the law' entitling her to demand a writ of sequestration on giving bond, and the case not being one in which the court had the power to issue the writ ex officio without bond, there was no valid seizure, and hence the lower court never acquired any jurisdiction in the matter. The result would be therefore without the intervention of this court, that the executors would be deprived of the right to conclude their administration through a proceeding entirely void. Hence we think the case a proper one for the exercise of our supervisory powers under the Constitution.
For the. reasons assigned, it is ordered and decreed that the writ of sequestration granted by the lower court herein be annulled and *177 set aside, and that the petition of Mrs. Anna M. Wilkinson be, and the same is hereby, dismissed at her cost.
MONROE, O. J., takes no part.
O’NIELL, J., without expressing an opinion on the merits of the ruling, dissents on the ground that the ruling of the judge of the civil district court was the exercise of a judicial function, not a violation of a ministerial duty.