O’NIELL, J.
This is a mandamus suit to compel the recorder of mortgages to cancel from the mortgage records the inscription of an instrument purporting to operate as a judicial mortgage against complainant.
The inscription or record complained of is of a judgment for alimony, rendered by the Supreme Court of the state of New York, on the 20th of February, 1914, ip a suit brought by Anna M. Macheca against the relator herein for a judgment of separation from bed and board. The copy of the judgment for alimony, which Mrs. Macheca had filed for record in the office of the recorder of mortgages for the parish of Orleans, was not a certified copy, but was accompanied by.her affidavit, alleging, that the judgment had been rendered, etc.
The reason for which relator contends that the document purporting to be a judgment against him for alimony cannot legally operate as a mortgage, but merely beclouds his title to real estate, is twofold, viz.: First, that the judgment was not recognized or ordered executed by a decree of a court of this state; and, second, that the instrument purporting to be a copy of the judgment is not a certified copy.
Relator alleged in his petition that he was divorced from Mrs. Anna M. Macheca by a judgment of the circuit court of Jackson county, Mo., rendered on the 22d of March, 1916. He alleged that she was not a resident of the state of Louisiana, but was represented here by a local attorney, and he prayed that she should be notified of this proceeding, through her attorney, and be ordered to show cause why the writ of mandamus against the recorder of mortgages should not be maintained and made peremptory.
In her answer to the suit Mrs. Macheca pleaded: First, that, the proceeding by mandamus was not an appropriate remedy for the relief sought, and, second, that the petition did not set forth a cause of action, and *463 that plaintiff was in fact without a right of action. Reserving these pleas or exceptions, she admitted and averred that she was married to relator in Jersey City, N. J., on the 10th of May, 1910, and averred that the matrimonial domicile, as well as the personal domicile of each spouse, had been continuously in the state of New York since the date of the marriage. She averred that she had brought suit against the relator in the Supreme Court of New York county, in the state of New York, on the 30th of December, 1912, for a separation from bed and board, and that the suit was yet pending, untried and undetermined; that relator had appeared personally and made himself a party to the suit; and that she had obtained the judgment for alimony, the inscription of which relator is now attempting to have canceled. She averred that the court that rendered the judgment had exclusive jurisdiction of the subject-matter and of the parties to the suit. She admitted that relator had instituted a suit against her for divorce in the circuit court of Jackson county, Mo., on the 15th of January, 1916, and had obtained a judgment of divorce on the 22d of March, 1916. She averred, however, that the judgment was absolutely null, void, and of no effect, for the reasons: First, that the circuit court of Jackson county, Mo., had not jurisdiction of the suit, either ratione máteme or ratione personas, because neither party to the suit was ever domiciled in the state of Missouri, nor was their matrimonial domicile ever in that state, and because the jurisdiction of the Missouri court was invoked by relator in fraud and defiance of the jurisdiction already acquired by the New York court; and, second, that she was not summoned or cited or notified of the suit in the Missouri court, in the manner and form required by law, and was absolutely ignorant of the proceedings, notwithstanding the newspaper publication of the citation or notice, which process, she averred, was null, void, and of no effect, was not due process of law, and was violative of the Constitution of the United States. She acknowledged having filed the alimony judgment for record in the mortgage office, averred that it operated ¡as a valid mortgage against relator, and prayed that the alternative writ of mandamus issued herein should be annulled and revoked, and that relator’s demand should be rejected at his cost.
The recorder of mortgages submitted the case for decision without urging any defense to the proceeding.
On the trial of the ease, relator introduced in evidence only the copy of the inscription complained of, which was annexed to and formed part of his petition. Defendants offered no evidence whatever. The case, therefore, although virtually tried upon evidence adduced, was actually submitted on the pleadings. The court rendered judgment in favor of defendants, maintaining the exception of no cause or right of action, and rejecting relator’s demand at his cost. Relator has appealed.
The district judge gave two distinct reasons for his decree, viz.: First, that the suit was an action to annul a foreign judgment; and, second, that the relator was forbidden by article 105 of the Code of Practice to bring an action of this character against his wife.
Opinion.
[1,2] This is not an action to annul the judgment for alimony. The only demand is that the inscription of the judgment and accompanying affidavit be canceled and erased from the mortgage records. A cancellation of the inscription or record of the judgment would not annul the judgment itself, or affect its validity in any respect. The recording of u judgment on the mortgage record, so as to create a judicial mortgage, is, to that extent, an execution of the judgment. A judgment cannot be effectively executed, even *465 to the extent of recording it on the mortgage record, pending a suspensive appeal, or until the judgment has become final and executory. A suit to cancel and erase from the mortgage records the inscription or record of a judgment, on the ground that the judgment is not executory, is merely a suit to prevent, to that extent, the execution of the judgment. Such a suit is not an attack upon the validity of the judgment. We are therefore constrained to reverse the district court’s ruling that this is an action to annul the foreign judgment.
[3] The ruling that relator had no right of action is founded upon the theory that, as a corollary of the codal provision that a woman cannot sue her husband except for certain specified causes, a man cannot sue his wife except for the same specified causes. Eut, pretermitting the question of relator’s having a right of action, we do not know upon what theory the court decided that relator’s petition did not disclose a cause of action. By the precise language of article 3326 of the Civil Code, this foreign judgment could- not have the effect of a mortgage, and should not have been recorded as such, without having been, by a decree of a court of this state, recognized and made executory; viz.: '
“Mortgages result from the judgments rendered in other states * * * or in foreign countries, only in so far as the execution has been ordered by a tribunal of this state, in the manner prescribed by law.”
‘ The question of effect of this judgment for alimony, in that respect, was incidentally decided by this court, in a suit between the parties hereto. In re Succession of Margaret Macheca, No. 23847, 147 La. 164, 84 South. 574. The question was whether the judgment operated as a lien upon property belonging to the present relator, situated in this state. It was said, in the court’s opinion, that the judgment could not be executed here, or have effect as a mortgage, without having-been recognized and declared executory, by a decree of a court of this state.
[4] In Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. 269, 33 L. Ed. 538, referring to the provision in section 1 of article 4 of the Constitution of the United States, that full faith and credit shall be given in each state to the judgments of another state, it was said:
Such constitutional provision does “not make the judgments of the states domestic judgments to all intents and purposes, but only gives a general validity, faith and credit to them as evidence.
“No execution can be issued upon such judgments without a new suit in the tribunals of other states, and they enjoy, not the right of priority or privilege or lien which they have in the state where they are pronounced, but that only which the lex fori gives to them by its-own laws, in their character of foreign judgments.”.
In McKenzie v. Havard, 12 Mart. (O. S.) 101, it was said: , ,
“Judgments, in other states, do not give any lien here, when their execution is not ordered by a judge of this [state].”
In Bonnafe & Co. v. Lane, 5 La. Ann. 225, it was said:
“The recordation of a decree rendering a foreign judgment executory in the office of recorder of mortgages creates a judicial mortgage.”
In the Succession of Lucas, 11 La. Ann. 296, it was said:
“Foreign judgments have no executory force in this state until they acquire it by the judgment and fiat of our own tribunals. To procure such a fiat a personal action must be brought upon the judgment — an action, the prescription of which is governed by article 3508 of the Code.”
In Turley v. Dreyfus, 35 La. Ann. 510, it was said:
“The only remedy of the holder [of a judgment rendered by a Tennessee court] is to-sue upon it as the evidence of a debt and to recover a judgment in a Louisiana court for the amount thereof, which will be a Louisiana judgment and executed as such. The court here is not concerned with the mode of execu *467 tion of Tennessee judgments in that state, but only with the question whether the judgment is binding on the party sued here and has the effect of establishing, as a thing adjudged, the existence of the debt. If so, it entitles him to a judgment in a Louisiana court for the debt evidenced thereby.”
[5] With regard to relator’s complaint that the instrument purporting to be a copy of a foreign judgment, which Mrs. Macheca filed for record in the mortgage office, was not an authentic copy, or certified copy, article 336G of the .Civil Code lays down the rule:
“To obtain an inscription of a public act or judgment, the creditor, either in person or by an agent, shall present an authentic copy of the act or judgment to be recorded, to .the register of mortgages of the place where the inscription is to be made.”
No argument has been made, and none occurs to us, in support of the contention that relator is not entitled to the relief prayed for if the mere fact that Mrs. Macheca is a party defendant does not deprive him of a right of action.
In her answer to the suit, Mrs. Macheca admitted that relator had obtained the judgment of divorce in the circuit court of Jackson county, Mo., as alleged in his petition. It is true she averred that the judgment was null for want of jurisdiction and for want of a valid citation; but such causes of nullity we assume were latent, not apparent in the judgment itself. Without deciding the point —for a decision of the question is not necessary in this case — we are of the opinion that the burden of proof was upon Mrs. Macheca to prove the nullity of the judgment of divorce.
[6] Assuming 'that the judgment of divorce rendered by the Missouri court was not valid, and that Mrs. Macheca is yet the wife of the relator, we are of the opinion that article 105 of the Code of Practice does not stand in the way of plaintiff’s right to maintain this action. .The article, in terms, only forbids a woman to sue her husband, except for the causes specified, viz.:
“A married woman cannot sue her husband as long as the marriage continues, except it be to obtain a separation from bed and board, or for the separation of property, or for th'e restitution and enjoyment of her paraphernal property, or in case she holds her property separate from him by her marriage contract, or for divorce; but in no ease can she sue her husband without the authorization of the court before which she brings her action.”
The district court cites two decisions to support the converse of the proposition, i. e., that a man cannot sue his wife except for the causes specified, viz.: State ex rel. Lasserre v. Michel et al., 105 La. 741, 30 South. 122, 54 L. R. A. 927, and Nuss v. Nuss et al., 112 La. 265, 36 South. 345. These decisions do not sustain the ruling.
In State ex rel. Lasserre v. Michel et al., the question was whether the husband could maintain an action against his wife in which he had obtained a writ of habeas corpus, to compel her to give him possession of their child. The district court ruled that, by article 105 of the Code of Pj-actice, the husband was denied the right to .institute the suit against his wife, but this court reversed the decree and maintained the right of the husband to institute and maintain the action against his wife.
The case of Nuss v. Nuss et al. was an action by the husband against his wife and her sister to annul two acts of sale as simulations. The property had been transferred by the plaintiff to the sister of his wife pending an action brought by the wife for a separation of property. The transfer was made with the understanding among the parties that, after the judgment of separation, the transferee would transfer the property to the wife in settlement of a judgment which she had obtained against her husband; which was actually done.' The subsequent suit of the husband to annul the transactions was decided against him, not upon the theory that *469 the husband was forbidden to sue his wife, but upon a plea of estoppel filed by her and her sister, founded upon the fact that the plaintiff had intervened in the authentic act of transfer by his sister-in-law to his wife, and had authorized his wife to buy the property, In the opening sentence of the opinion, this court disclaimed the intention to pass upon the question of the right of the husband to sue his wife, viz.:
“We are not called on in this case to discuss and pass upon the question as to whether, as a general proposition or rule, a husband is not authorized to institute judicial proceedings against his wife, nor whether, if such was the case, the court could or should of its own motion dismiss a suit, where this had been attempted, wherein the parties themselves raised no such issue.” •
Counsel for Mrs. Macheca cite three other decisions in support of their contention that the husband is forbidden to institute a suit of this character against his wife, viz.: Very v. Very, 9 La.. Ann. 283; Kelly & Frazier v, Robertson, 10 La. Ann, 303; and Hawthorne v. Clark, 39 La. Ann. 678, 2 South. 561. Our opinion is that these decisions do not sustain the doctrine in support of which they are cited.
Very v. Very was a suit by the wife against her husband for a separation of property and for a judgment on her paraphernal claim; Answering the suit, the defendant charged that his wife had, by removing her slaves from the plantation belonging to the marital community at a time when they were needed to cultivate the land, caused damage to the marital community. He therefore set up a reconventional demand for the damages, and also prayed for a • judgment of separation from bed and board. By the decree of the district court, the plaintiff was given a separation of property, the administration of her separate estate, and a judgment for the amount of the paraphernal funds spent by her husband. He was given a judgment of separation from bed and board, but his demand for damages to the marital community was rejected. He alone appealed from the judgment. The only matter at issue on appeal, therefore,/was the demand of the husband against his wife for damages to the community, with regard to which, this court said:
“Although the husband, who is head and’ master of the community, cannot, from the-.peculiar relation subsisting between husband'- and wife, exercise any right of action against the wife for damages occasioned to the community by his wife’s acts, yet it would not-be equitable or just to compel him to pay back to her moneys employed by him with her consent for the benefit of the community, without taking account of the property retained by the wife belonging to the community and of the losses sustained by the community in consequence of the wife’s resistance of the marital authority.”
The court did not reject the demand of the husband to offset against the claim of his-wife his claim for damages which she had inflicted upon the marital community. On the-contrary, because the plaintiff had resumed: administration of her separate estate and was= in possession of it before she instituted the-suit, and because the defendant had died' pending the appeal, the court rendered a judgment of nonsuit on his demand for damages. The decision is rather favorable to the position of the relator in this suit, because-it maintains that, although the husband cannot sue his .wife for damages inflicted by her upon the marital community, nevertheless-, when she invokes the aid or process of the-court, or -attempts to obtain a .judgment against him to protect her separate property rights, the marital relation does not prevent' his defending the suit, even, to the extent'of assuming an offensive attitude and suing her.
The case of Kelly & Frazier v. Robertson-, was a suit by creditors of the marital community existing between tbe defendants, to-have a liquidation or settlement of the com— *471 munity and to compel the' wife to disclose and bring into court her indebtedness to the community in order that the amount thereof might be paid over to the complaining creditors of the community. The ruling was expressed in the syllabus of the decision thus:
- “No action can be maintained to liquidate the affairs of the community, and establish the wife’s indebtedness thereunto, until it is dissolved. The community can only be dissolved by action for divorce or separation from bed and board.”
The case of Hawthorne v. Clark was decided against the plaintiff on the ground that he had no interest whatever in the suit. The action was brought to annul a sale of real estate as a simulation. The property had been sold to the defendant by her husband previous to their marriage. Thereafter they separated, and he made a simulated sale of the property to Hawthorne in order that the latter might sue and recover the property and return it to him, Clark. That the transaction was made with that understanding was admitted by both Hawthorne and Clark on the trial of the case. Under these circumstances, the court concluded that the plaintiff had no interest whatever in the suit; and the court said that, having so concluded, it was unnecessary to discuss the abstract question presented, whether, if the sale by Clark to plaintiff had been real, plaintiff would have any better' right to maintain the suit than Clark would have. True, it was said in the opinion that Clark could not bring suit against his wife to have the sale annulled during the existence of the marriage. But, regardless of the marital relation, Clark ■could not have had a cause or right of action to set aside as a simulation a sale which he had made to his wife before they were married. It is therefore not certain that it was because of the marital relation that the court said that Clark would have had no right of action to sue his wife to set aside the sale.
The most appropriate of the decisions to which we are referred is the case of Alexander v. Alexander, 12 La. Ann. 588, where it was held that the marital relation did not prevent a man’s suing his wife for a debt due him by the succession of a deceased person, of whom the defendant,'plaintiff’s wife, was the universal legatee and testamentary executor. It is true the court laid considerable stress upon the idea that the defendant was sued in her representative capacity as executrix. But the fact remains, and it was earnestly urged, that the defendant was also the universal legatee or testamentary heir of the deceased, and was therefore the only person interested in the defense of the suit. In the course of the opinion it was said:
“There is no law which prohibits the husband from instituting such a suit, and, ex necessitate rei, the action must lie to prevent a failure of justice.”
In the case before us, the action must lie to prevent a failure of justice. This is not primarily a suit against Mrs. Maeheca. She was made a party defendant for her own protection, to afford her an opportunity to protect whatever right she might have, by showing cause, if any she could, why the inscription complained of should not be canceled. But the suit is primarily against the recorder of mortgages in his official capacity; and the only purpose or object of the suit is to compel the officer to cancel the unauthorized record which he made. It would be an anomalous rule, if the marital relation should stand in the way of a man's bringing suit against a public officer to prevent an unauthorized execution of a judgment against the complainant, in any case where the complainant’s wife would be a proper or necessary party to the suit. Such a rule would prevent a man’s protecting his property rights against any unauthorized or illegal transaction between his wife and a third party.
It is not necessary to decide in this case, and we do not decide whether, notwithstand *473 ing the prohibition in article 105 of the Code of Practice in terms applies only to married women, nevertheless the marital relation should, under some circumstances, prevent a man’s suing his wife. Sufficient for the day is the case before us. The suit is primarily against a public officer and its object is to prevent an injustice by compelling the officer to perform an official duty. Under these circumstances the marital relation — if that relation exists between the complainant and the other party m'ade defendant — cannot deprive the complainant of his right of action.
[7] Defendant’s plea that the writ of mandamus is not an appropriate process for compelling the cancellation of an unauthorized inscription of a judgment is not supported by the decisions cited. The case of Carrie Arbour v. Board of Managers, 131 La. 163, 59 South. 108, is not at all appropriate. State ex rel. Fix v. Herron, 29 La. Ann. 848, was a suit by the holder of a tax title to have all liens and incumbrances erased from the records. Intimating that, in effect, the suit was to confirm the tax sale, the court held that mandamus was not the proper remedy. The other decisions cited are merely to the effect that mandamus is not a proper remedy for compelling the cancellation of a deed of conveyance, or is not a proper substitute for a petitory action.
It is well settled that mandamus is t;he proper remedy for compelling the recorder to canlbt an illegal orf unauthorized inscription purporting to operate as a mortgage. •Savage v. Holmes, 15 La. Ann. 334; State ex rel. Deblieux v. Recorder, 25 La. Ann. 61; Lanaux v. Recorder of Mortgages, 36 La. Ann. 974; State ex rel. Busha’s Heirs v. Register, 113 La. 98, 36 South. 900.
Our conclusion is that appellant is entitled to the relief prayed for. Although the main reason given for the judgment of the district court was that relator had no cause or right of action, the case was, in fact, decided upon its merits; that is, upon the allegations and admissions made in the pleadings. The only questions of fact that were put at issue by the pleadings pertain to the question of validity of the judgment of divorce rendered "by the Missouri court, which question is not at all important in our view of this case. There is therefore no occasion or reason for remanding the case.
The judgment appealed from is annulled, and the writ of mandamus is now made peremptory, commanding the recorder of mortgages to cancel and erase from the mortgage records the inscription of the alimony judgment and accompanying affidavit complained of by relator.
The defendant, Mrs. Macheca, is to pay the costs of this suit.
MONROE, O. J., takes no part.