No. 9177.

Orleans Appeal.

STATE EX REL. JOHN LIUZZA v. ALPHA P. SIMS ET AL.

(January 19, 1925, Opinion and Decree.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Landlord and Tenant Par. 7, 9.**

A lease of real estate may be made either by written or verbal contract, but if in the latter form, it is not susceptible of registry or recordation.

2. **Louisiana Digest—Mandamus—Par. 23 48, 78, 87.**

Mandamus will lie to compel the cancellation of an affidavit in which the existence of a verbal lease is alleged. Affiant, as well as the registrar of conveyances, causing the illegal registration of such a document, are proper parties defendant to such proceedings.

3. **Louisiana Digest—Mandamus—Par. 2.**

Where pleadings amply show that the law affords no relief by ordinary means, and where justice requires that some remedy should exist for redressing a wrong or abuse of whatever nature, mandamus, above all other summary procedure, is the proper remedy.

4. **Louisiana Digest—Appeal—Par. 18.**

Where relator reserves in his pleadings a right to sue for damages arising from illegal acts of respondent, an appellate court is not justified in disposing of the matters involved on appeal as moot issues, claimed by respondent to have become such since date of appeal.

Appeal from Civil District Court for the Parish of Orleans, Division "D", Hon. Porter Parker, Judge.

This is a mandamus suit to compel the cancellation of an affidavit of a verbal lease illegally registered by the lessor.

There was judgment for plaintiff ordering the cancellation and defendant has appealed.

Judgment affirmed.

John R. Upton, Wm. A. Porteous, Wm. W. Ogden, attorneys for plaintiff and appellee.

John R. Loomis, McCloskey & Benedict, Jno. Wagner, attorneys for defendant and appellant.

BELL, J. This is an application for a writ of mandamus, on the relation of John Liuzza, against the Register of Conveyances and Alpha P. Simms, to have cancelled and erased from the records of the Conveyance Office of the Parish of Orleans the inscription of an alleged verbal lease, which defendant, Alpha P. Simms, claims he entered into with relator regarding part of the building (now demolished) and formerly known as the Southland Hotel, No. 348 Carondelet Street, in the City of New Orleans. Relator charges that the recorded affidavit is false and untrue, and was made for the purpose of obstructing and hindering relator from effecting a sale of property, particularly the real estate on which the old buildings were situated.

The petition further recites that there is no warrant or authority in law for the registering of an affidavit purporting to show a verbal lease, and that the property described in said petition is entirely unaffected by such an affidavit, and that, therefore, its inscription in the Conveyance Office should be cancelled and annulled.

To this petition, defendant filed exceptions of no right or cause of action; that defendant, Alpha P. Simms, is entitled to be impleaded in a direct action; that mandamus does not lie, except to enforce the performance of a purely ministerial act, and, finally, that there is a misjoinder of parties. Filing, contemporaneously with his exceptions, his answer on the merits, as required by law, defendant, Simms, reaffirmed under oath the allegations made in his affidavit and admitted by him to have been recorded. The other defendant, the Registrar of Conveyances, answered by admitting the recordation of the affidavit, and, for lack of information, denied all other allegations of relator's petition.

The foregoing exceptions were overruled. Defendant, Alpha P. Simms, offered no proof, and judgment on the merits was rendered in favor of relator, and the inscription of the affidavit was ordered cancelled. From this judgment, defendant, Alpha P. Simms, has appealed suspensively to this court.

The recorded affidavit is set out in relator's petition as follows:

"State of Louisiana,
"Parish of Orleans.

"Before me, the undersigned authority, personally came and appeared:

MR. ALPHA P. SIMMS,

who, being duly sworn swears:

"That he is occupying the premises known as the Southland Hotel, 348 Carondelet Street, being the three upper floors, the office on the ground floor, the Barber Shop, Linen Room, Fruit Stand, Root Beer Stand and Lunch Stand; that he has occupied these premises under a lease at One Hundred and Fifty ($150.00) Dollars per month, payable on the first day of each and every month, in advance.

"That he has occupied the premises for a number of years under those terms and that John Liuzza is the owner of said premises, which is situated at the corner of Carondelet and Perdido Streets, in square bounded by St. Charles and Union Streets; that in the later part of December, 1922, John Liuzza, the owner, had agreed verbally with affiant that he would remain in said premises until the first of October, 1923, at the same rental of $150.00 per month.

"That relying upon said verbal lease affiant has gone to considerable expense in refitting the place, according to Liuzza's instructions, painting and remodelling, repairing roof and other repairs, and that affiant desires to record this in the Conveyance Office as notice of the verbal lease with the said John Liuzza, owner, at $150.00 per month, payable in advance, and ending October 1, 1923.

"(Sgd.)　A. P. Simms.

"Sworn to and subscribed before me this 31st day of March, 1923.

"(Sgd.)　Jno. Wagner,
"Not. Pub."

The issue of fact as to whether there was such a verbal lease as above narrated, is, under our view of this case, wholly immaterial and need not be here determined. The all-important issues involved in this litigation are purely questions of law and may be stated as follows:

I. DOES THE LAW AUTHORIZE A VERBAL LEASE?

Article 2683 of the Revised Civil Code of 1870 provides, without qualification, that "leases may be either by written or verbal contract". Article 2653 of the Code of 1825 (in identical verbiage as R. C. C. Art. 2683) was amended by Act 42 of 1865 to read as follows:

"Leases may be made either by written or verbal contract, but no lease of real estate shall be proved by parol."

It is plain from the language found in the last clause of the above-quoted Act, that legislative pronouncement was thereby made against all verbal leases of real estate, for it is impossible to conceive the existence of a verbal contract of lease which could not be verbally provable. Not being provable, it was not enforceable even between the contracting parties, and, therefore, non-existent.

Prompt awakening to the absurdity of such legislation was evidenced by the enactment of Act 9 of 1866, repealing *in toto* Act 42 of 1865, and reviving Article 2653 in its original verbiage, as found in the Code of 1825 and as perpetuated later in the Code of 1870.

It is, therefore, beyond peradventure that the substantive law, as expressed by the compilers and revisers of the Civil Code,—despite the temporary and ill-advised enactment, found in Act 42 of 1865,—has always sanctioned verbal leases of any *corporeal thing, movable or immovable*, excepting those which cannot be used without being destroyed by their very use (R. C. C., Art. 2678.)

## II. IS A VERBAL LEASE OR ANY OTHER VERBAL CONTRACT LEGALLY OR PHYSICALLY SUSCEPTIBLE OF RECORDATION?

Public recordation of rights arising from contracts or judgments of whatsoever nature, has, as its single and legal objective, the notification of such rights to third persons not parties to the original transactions or proceedings in which such contractural or judicial obligations have arisen. It is the method prescribed by law in which that thing or right, granted by covenant or decree, shall be preserved against or notified to the world on behalf of those directly concerned. But it is only by some muniment of title or some written instrument or act, whereby that which is agreed or decreed can be manifested or expressed for purposes of recordation.

The following Articles of the Revised Civil Code are pertinent:

"Art. 2266. All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording. The recording shall have effect from the time when the act is deposited in the proper office, and endorsed by the proper officer."

"Art. 2683 (2653). Leases may be made either by written or verbal contract."

"Art. 2733 (2704). If the lessor sells the thing leased, the purchaser cannot turn out the tenant before his lease has expired, unless the contrary has been stipulated in the contract."

"Art. 2741 (2712). If the lease has not been reduced to writing, the purchaser cannot be compelled to give any indemnification."

In supplemental brief for relator, our attention is invited to the early case of Brown vs. Martin & Crenshaw, 9 La. Ann. 504, in which the Supreme Court interpreted Art. 2712 of the Code of 1825, which is now Art. 2741 of the Revised Civil Code. In that case, the court said:

"Art. 2704 of the Code declares, that if the lessor sells the thing leased, the purchaser cannot expel the lessee until the expiration of the time fixed for the lease, unless the right to do so has been reserved in the contract of lease itself. Art. 2712 says, that if the lease is not made in writing, the purchaser is not bound to make any indemnification to the lessee.

"Although the lease of even a predial estate may be made by either a verbal or a written contract, we think the proper construction of our Code on that subject is, that a purchaser of property subject to a lease, is entirely unaffected by it, unless the lease is evidenced by a written contract. The violation of such a verbal contract by the lessor, in selling the property before the expiration of the lease, without reserving the rights of his lessee, might give rise to an action of damages against the lessor, but his vendee acquires the property free from any incumbrances by reason of the lessee."

The intention of the court in the foregoing decision was to stress the impossibility of asserting as against a third party, any contractural rights arising from a verbal lease without the same being converted into and evidenced by a written contract. It is not physically possible to record a verbal contract or judgment. When either is evidenced in writing, it is no longer a verbal agreement or decree. An *ex parte* written affidavit concerning a verbal lease made by one alleging himself to be a party to the verbal agreement of lease, can have no effect in law as a recorded document manifesting a contract which, in itself, is not susceptible of recordation. It follows, therefore, that in registering respondent's affidavit, the Registrar of Conveyances exercised or performed a ministerial function which he had no authority or right to exercise under the law. Having done that which he should not have done, the paramount question of law in this case is:

## III. DOES MANDAMUS LIE TO COMPEL THE UNDOING OF THAT ILLEGALLY DONE BY ONE EXERCISING MINISTERIAL FUNCTIONS OR POWERS?

It is contended by counsel for respondent, Simms, that the extraordinary, summary writ of mandamus cannot lie in the instant case, where the dominant issue as to this respondent's term of lease or right of possession, involves essentially issues of fact, which respondent is entitled to have determined, with or without jury, in a direct action. It is further contended that mandamus, without exception, is a remedy only sanctioned where a relator seeks the enforcement of some ministerial duty imposed by law. These arguments, and the authorities cited by counsel, would be well worthy of consideration if the premises upon which they are here enunciated were true. It is error to state that in the instant case the dominant issue of fact is whether a lease or right of possession under a lease existed by virtue of an alleged verbal contract, such as is set out in the recorded affidavit.

This court, concluding as hereinabove noted, that the issues involved in this litigation are solely and dominantly questions of law, and being of the opinion that the registration or recordation of the affidavit for purposes of asserting rights under a verbal lease was an object impossible of performance, we find no merit in the contentions here urged by respondent, Simms.

Counsel for this respondent invites our attention particularly to the ruling made in the case of New Orleans Land Co. vs. Registrar of Conveyances et al., 139 La. 478, 71 South 773. We have given careful consideration to this authority. In that case mandamus issued and was granted, directing the cancellation from the records of the Conveyance Office for the Parish of Orleans of certain documents which the Nylka Land Company, Ltd., made co-defendant with the Registrar, had caused to be recorded as muniments of title to a certain tract of land. The documents recorded included an auditor's deed, a sale for city taxes, a judgment of the

Civil District Court, and, finally, an affidavit made by Hamilton Sims and wife. In this affidavit these affiants declared that they had purchased the property affected by the registry in question, by notarial act, on a date mentioned, and had been in undisturbed possession of the same up to the date of filing said affidavit, and that the property in question had been sold to the State for delinquent taxes of certain years, and had thereafter been conveyed by the State, through various conveyances, to the Nylka Land Company, Ltd.

It appears from a reading of this case that affiants were not those asserting the title to the property affected by the registration of the affidavit, but were in fact parties undertaking to relinquish, through the averments made in the affidavit, all right or title to the property involved, in favor of the Nylka Land Company, one of the respondents to the mandamus proceedings. The affiants themselves were not made even parties to the proceedings, and had simply declared that the purpose of the affidavit or quit claim was to place in authentic form the facts enumerated therein. We find no application of the cited case to that now before us.

The later and sound jurisprudence applicable to the instant case, and which appeals to us as correct appreciation of the law which should govern and prevail, is found in State ex rel. Braswell vs. Hallam, 150 La. 922, 91 South. 298. In that case the Registrar of Conveyances was proceeded against by mandamus to cancel the inscription of an affidavit made by the affiant to the effect that the owner of certain real estate had accepted in writing affiant's offer to purchase said property, particularly described in the affidavit, and that the owner had refused to carry out his contract, and that affiant had placed the affidavit on record as her claim to the property, intending to institute judicial proceedings therefor. The

court, in making the writ peremptory and directing a cancellation of the affidavit, said:

"There is no merit in appellants' plea or exception that 'because relator might have resorted to an ordinary suit, he was not entitled to the summary proceedings by mandamus'. Article 831 of the Code of Practice declares that a judge may, in his discretion, issue a writ of mandamus even when the complainant has other means of relief, if the slowness of an ordinary proceeding would be likely to cause such a delay as to hamper the administration of justice. If the recording of an *ex parte* affidavit, laying claim to another person's property, should compel that other person to resort to an ordinary suit for slander of title, there would be no end to such suit. * * * But the Register of Conveyances should have refused to record the *ex parte* affidavit of Mrs. Hallam, which served no other purpose than to cast a cloud upon the title to the property. Mandamus was therefore the proper proceeding to compel the Register of Conveyances to perform his ministerial duty, to cancel the affidavit."

In State ex rel. Macheca vs. Dunn, 148 La. 460, 87 South. 236, the court said:

"It is well settled that mandamus is the proper remedy for compelling the recorder to cancel an illegal or unauthorized inscription purporting to operate as a mortgage."

See also State ex rel. Henderson Iron Works vs. Jeter, Tax Assessor, 151 La. 1011, 92 South. 594.

In Lanaux vs. Recorder of Mortgages, 36 La. Ann. 974, it was held:

"The object of a mandamus in our practice is to prevent a denial of justice or to avert the consequence of a defective remedy. It must be issued when there is no ordinary legal relief and justice requires that a mode of redressing the wrong shall be found. It may be issued even when there are other means of relief, if the ordinary legal forms will produce such delay that the public good will suffer and the administration of justice be hindered."

IV. SHOULD AN APPELLATE COURT DISPOSE OF MATTERS APPARENTLY INVOLVING MOOT ISSUES WHICH HAVE BECOME SUCH SUBSEQUENT TO THE APPEAL?

It is contended by counsel for relator that inasmuch as the lease or right of occupancy or tenure involved in this litigation all expired October 1, 1923, that there is nothing before this court excepting a moot issue, and that, therefore, there being nothing to adjudicate, the matter should be dismissed.

The relator in this case reserves, in his petition, the right to sue for damages resulting from, what he claims to have been the illegal registration of an affidavit filed for the sole purpose of hindering relator from disposing of his property. We can find no justification for the dismissal of these proceedings or for nullifying the judgment appealed from on any such plea as finally herein urged by respondent. (15 N. W. 496.)

The judgment appealed from is, in every respect, just and proper, and, in our opinion, should be affirmed.

It is, therefore, ordered that the judgment appealed from herein be and the same is hereby affirmed, costs in both courts to be borne by appellant.