STATE EX REL. MRS. BERTHA GERVAIS, WIFE OF ANDREW L. TUJAGUE, ET AL., Relators and Appellees, v. AUGUSTUS C. WILLIAMS, RECORDER OF MORTGAGES, ET AL., Appellant.

---

(February 15, 1926. Opinion and Decree.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Mandamus—Par. 23, 48, 87.**

Mandamus properly lies against a Recorder of Mortgages and a furnisher of materials to compel cancellation of the latter's attested account filed more than thirty days after registry of notice with the Recorder that the owner of the building has accepted the work.

Appeal from Civil District Court, Div. "B", Hon. M. M. Boatner, Judge.

This is a mandamus suit against the recorder of mortgages. . There was judgment in favor of the relators and defendants appealed. Judgment affirmed.

J. J. Landry and Emile Pomes of New Orleans, attorneys for relator and appellee.

Geo. Montgomery of New Orleans, attorney for recorder of mortgages and appellee.

E. M. Cahn and W. F. Conkerton of New Orleans, attorneys for defendant appellant.

WILLIAM A. BELL, J. Relators herein, as owners of a certain building situated in the City of New Orleans, bring this action for alternative writs of mandamus, directed against. the Recorder of Mortgages for the Parish of Orleans and against the Standard Sanitary Manufacturing Company, to compel the erasure of a certain lien and privilege recorded by the latter respondent for materials furnished to a sub-contractor and placed in the relators' building. The building contract was executed, recorded and bonded under the provisions of Act 139 of 1922.

All allegations necessary to sustain the writ are admitted, except the date upon which it is alleged that final payment was made to the contractor.

The terms of the building contract provided that the total price of the building should be paid in five installments of $1,890.00 each. Relators' written notice of acceptance of the building was made upon payment of the fourth installment, to-wit: August 15, 1923, and recordation of said notice was filed in the Mortgage Office on the same date. The fifth and final installment was made in accordance with law, thirty days after recordation of the owners' acceptance of the building. This payment was evidenced by two checks aggregating $1,890.00. Each check was dated September 17, 1923, and was payable to the contractor. One of these checks was for the sum of $1,680.00, and the other for $210.00; both of these checks were drawn by the Homestead Company, who carried the loan for relators. The small check was indorsed by the contractor, and turned over to relators, who, in turn, delivered it to the Homestead Company, the latter company holding it for account of relators until some time in October, 1924. This transaction as to the smaller check was had because of the fact that the contractor had not been able to build a fence in connection with the building for lack of

skilled labor; and it appears that he took the matter up with the building expert and with relators, and upon reaching an agreement between them as to the price of the fence, relators agreed to accept the work on the building as it was. It was necessary for the Homestead to pay out the entire last payment, because relators' loan from them was based upon the entire contract price, and it was upon that price that the Homestead was to draw interest.

The check appears from the indorsements thereon to have been ultimately deposited by the Homestead Company, and there is no evidence in the record that the fence was ever built.

It is contended by the Standard Sanitary Manufacturing Company, one of the respondents herein, that the building was never completed, and that until completion there could not have been a valid legal acceptance of the building by relators, and that therefore the provisions of Act 139 of 1922, requiring recordation of a material man's lien within thirty days after written notice of acceptance of the work by the owner cannot apply in the instant case.

It appears from the record that this respondent's attested account was not filed in the Mortgage Office until September 19, 1923, that is, until 34 days after the recordation of relators' acceptance of the building.

The sole question for determination is whether the material man's lien was properly recorded. Act 139 of 1922 is the only law controlling the rights of the parties involved in this proceeding. Section 2 of this Act reads, in part, as follows:

"* * * Every person having a claim against the undertaker, contractor, master mechanic or contracting engineer shall after the date of the completion of said work by, or the date of default of the undertaker, contractor, master mechanic or contracting engineer, mail or otherwise send a sworn itemized statement thereof to the owner or his architect or other representative, and record a sworn statement of the amount thereof, of his contract, if it has been reduced to writing, in the office of the Recorder of Mortgages for the parish in which the work has been done within thirty days after the registry of notice with the Recorder of Mortgages for the parish where the work is done, by the owner of his acceptance of the work or of the contractor's default, or the recordation of the architect's certificate of completion, until which time the delay to file claims of privileges shall not run.

"If at the expiration of said thirty days there are no such claims filed, the Recorder of Mortgages shall, upon written demand of any party interested, cancel and erase from the books of his office all inscriptions resulting from the recordation of said contract or bond as to all parties except the contractor. If at the expiration of thirty days there are such recorded claims filed, the owner or other interested person may file a petition in a court of competent jurisdiction citing all claimants, including the undertaker, master mechanic, or engineer, against whom said claims are filed, and the surety on the bond * * *."

It follows from the provisions of the above quoted Act that the sworn statement required of material men for the preservation of their liens must be filed not from a designated time after completion of the building, as formerly provided in Act 134 of 1906, but as now provided, within thirty days after written acceptance of the building by the owner has been recorded with the Recorder of Mortgages for the parish where the work is done.

In the instant case, there appears from the record that the contractor gave receipt in full for the fifth and final payment of the contract price on the building. This receipt was dated September 17, 1923, and on the same date the expert acting for the Homestead Company certified that all work had been done and materials furnished in accordance with contract and specifications, and that the contractor was entitled

to the final payment on the contract. The recordation of the owner's acceptance of the building was all the notice required by law to all parties concerned, and the Court finds nothing in the transaction here complained of which could have militated to the prejudice of the material men, respondent herein. The recordation of the attested account was undoubtedly irregular under the facts of this case, and the remedy for its cancellation as here sought has been properly brought. In State ex rel. Liuzza vs. Sims, et al., 1 La. App. 487, this court decided (writ by the Supreme Court being denied) the following:

"Mandamus will lie to compel the cancellation of an affidavit in which the existence of a verbal lease is alleged. Affiant, as well as the Register of Conveyances, causing the illegal registration of such a document, are proper parties defendant to such proceedings."

See also Lanaux vs. Recorder of Mortgages, 36 Ann. 974; State ex rel. Macheca vs. Dunn, 148 La. 460, 87 South. 236; State ex rel. Henderson Iron Works vs. Jeter, 151 La. 101, 92 South. 594.

The decisions of this Court cited in respondent's brief—State ex rel. Orleans Homestead Association vs. Recorder of Mortgages, 9 Ct. of App. 222; Daniel vs. Vasquez, 9 Ct. of App. 301—have no application to the instant case, the court having had under consideration, when rendering these decisions, the provisions of Act 134 of 1906.

The judgment appealed from is correct, and should be affirmed, at respondent's cost in both courts.