3 So.2d 609

KRAMER v. FREEMAN et al.

No. 36136.

June 30, 1941.

Rehearing Denied July 18, 1941.

Henican, Carriere & Cleveland, of New Orleans, for appellant.

Bentley G. Byrnes and Hubert M. Ansley, both of New Orleans, for appellees.

McCALEB, Justice.

The plaintiff, Benson Kramer, instituted this suit against his wife, Mrs. Jennie Cohen Kramer, and his mother-in-law, Mrs. Bessie Freeman Cohen, seeking to recover from them certain jewelry and cash, which they allegedly wrongfully took from him on three separate occasions.

In his petition, he charges, in substance, as follows: That on April 23, 1935, at about 9:30 p. m., while he was sleeping in the residence of his mother-in-law, she, with the assistance and cooperation of his wife, extracted from his trouser pockets a gold watch, chain and locket valued at $135 together with $185 in cash; that on May 3, 1935, at about 11:30 p. m., while he was sleeping at the same house, his mother-in-law struck him a stunning blow on the side of the head with a blunt instrument and forcibly took from him a purse or bag which had been secured to his person and which contained two diamond rings valued at $750 and $500, respectively, a platinum watch valued at $400 and $400 in cash; that his wife was present at the time and that she cooperated with and assisted her mother in the robbery. He

further avers that on April 20, 1935, his wife requested that he lend her a certain diamond ring valued at $600, which belonged to him, for the purpose of showing it to her brother; that she promised to return it immediately; that, in compliance with her request and upon her assurance that the ring would be promptly returned, he lent it to her but that, instead of returning it to him, his wife, acting in concert with her mother, kept the ring and has failed and refused to return it to him. He further avers that all of the cash and jewelry mentioned was and is his separate property, having been purchased prior to his marriage; that he has repeatedly made amicable request for its return and that, notwithstanding his demands, defendants have refused to restore it. He accordingly prayed for a judgment in solido against the defendants, condemning them to return all of the cash and jewelry taken from him and, in the alternative, that, in the event the defendants are unable to return his property, there be judgment in his favor and against them, in solido, for the value thereof amounting to the sum of $2,970.

Later, the plaintiff filed a supplemental and amended petition in which he alleged that his mother-in-law had, on April 26, 1935, purchased certain real estate situated in the City of New Orleans from the Union Homestead Association and that she, on March 29, 1937, transferred this real estate to his wife who appeared in the act of sale as "Mrs. Jennie Cohen, wife of Alexander Scholnick". On information and belief, he averred that his mother-in-law

and his wife used all or part of the cash and jewelry, which they had taken from him, for the purpose of making payments on the purchase price of this real estate and that, accordingly, he should be recognized as the sole owner or owner in indivision of the real property. The prayer of the supplemental petition is for judgment as prayed for in the original petition and further "that there be judgment recognizing petitioner as sole owner or owner in indivision of the real estate hereinabove described."

In due course, both defendants appeared and filed separate, but identically worded, exceptions of no right or cause of action to plaintiff's original and supplemental petitions. These exceptions were overruled by the trial judge. Upon the overruling of the wife's exception of no right or cause of action, she applied to this court for writs of prohibition and certiorari. The writs were refused.

Thereafter, the defendants filed separate answers in the case in which they denied, in substance, that either of them struck the plaintiff or took any jewelry or cash from him and also denied that he ever owned any of the property alleged to have been taken from him except one ring which they contend that he gave to his wife as an engagement ring before they married. They prayed to be hence dismissed with costs.

As a further defense to plaintiff's action, the defendants filed a plea of prescription of one year. In this plea, they set forth that plaintiff's cause of action is, in truth, a suit for damages based upon the com-

mission of offenses or tortious acts on their part; that the action was not filed until two years and seven months after the alleged offenses were committed and that it was consequently prescribed under the provisions of Article 3536 of the Civil Code.

On the issues thus joined, the case was referred by the District Judge to the Commissioner of the Civil District Court for trial on its merits. After hearing the evidence submitted by the parties litigant, the Commissioner filed his report with the District Judge in which he found that the plaintiff had proved, to his satisfaction, all of the essential allegations contained in the petition with respect to the felonious taking of his jewelry and cash by the defendants. He, however, recommended to the judge that the plaintiff should not be allowed to recover since it was his opinion that the plaintiff's suit was one for damages ex delicto and therefore barred by the prescription of one year.

The plaintiff thereafter filed exceptions to the Commissioner's report and the trial judge, after hearing argument on the exceptions, confirmed and approved the recommendations of the Commissioner, being of the view that the defendants' plea of prescription was well taken. He accordingly entered judgment dismissing the suit. The plaintiff has appealed.

The first question presented by this appeal is whether the plaintiff's suit is one for the recovery of damages resulting from an offense and therefore barred by the prescription of one year, or whether it is an action on a quasi contract for the restitution of property unlawfully taken and, as such, subject to the prescription of ten years as provided by Article 3544 of the Civil Code.

In delving for the correct solution of this problem, it is necessary, at the outset, to determine whether the acts committed by the defendants, which form the basis of the cause of action, afforded to the plaintiff two remedies—one in tort and one in quasi contract. There can be no doubt that the acts complained of were offenses within the meaning of Article 2315 of the Civil Code and that the plaintiff had a cause of action to recover all of the damages he suffered as a result of these torts. In addition to this, the wrongful taking and detention of plaintiff's property by the defendants imposed upon them an implied contractual obligation to return it and the plaintiff had the right to proceed in an action ex contractu to compel them to do so. See Articles 2292, 2293, 2294 and 2301 of the Civil Code; Morgan's Louisiana, etc., Ry. Co. v. Stewart, 119 La. 392, 44 So. 138; Ducros v. St. Bernard Cypress Co., 164 La. 787, 114 So. 654; Roney v. Peyton, La.App., 159 So. 469; Smith v. Phillips, 175 La. 198, 143 So. 47; Bryceland Lumber Co. v. Kerlin, 143 La. 242, 78 So. 482; Bell Lumber Co. v. Stout, 134 La. 987, 64 So. 881; Martin v. Texas Co., 150 La. 556, 90 So. 922; Liles v. Barnhart, 152 La. 419, 93 So. 490; Liles v. Producers Oil Co., 155 La. 385, 386, 99 So. 339, and Carter-Allen Jewelry Co. v. Overstreet, 165 La. 887, 116 So. 222. Article 2301 of the Civil Code provides:

"He who receives what is not due to him, *whether he receives it through error or knowingly,* obliges himself to restore it to him from whom he has unduly received it." (Italics ours.)

■ The plaintiff is entitled to demand that the obligation imposed upon the defendants by the foregoing article be enforced. But, in order to obtain relief ex contractu, it must plainly appear, if plaintiff is to avoid the prescription of one year, that he has elected to waive his cause of action in damages for the offenses committed by the defendants and is seeking restitution of his property. The question, therefore, is: Does plaintiff's pleading reveal that he has so elected?

■ It is the well settled jurisprudence of this State that the character which a plaintiff gives his pleadings and the form of his action govern the prescription applicable. See Antoine v. Franichevich, 184 La. 612, 167 So. 98, and Shepard Realty Co. v. United Shoe Stores Co., 193 La. 211, 190 So. 383. In the case at bar, the plaintiff alleges in his petition that the defendants have stolen and otherwise illegally obtained certain jewelry and cash from him and that on one occasion he was assaulted and struck by one of them. He does not, however, ask for damages in redress for the wrongs committed by the defendants (which would include the personal injuries he sustained) but, on the contrary, he prays that they be ordered to return the specific property which they abstracted from him or, in the alternative, in the event they cannot return it, that he be given judgment against them for its value.

This prayer clearly indicates an election on his part to waive his right to recover for the defendants' unlawful acts and limit his demand to a suit in quasi contract for the restitution of his property.

■ Counsel for the defendants maintain, however, that plaintiff's petition, when considered as a whole, exhibits that he is, in truth, suing for damages ex delicto. In support of their position, they point to the alternative prayer of the petition in which plaintiff prays for a judgment for the value of his property in the event the defendants are unable to restore it in kind. And counsel further say that, since the jurisprudence is well established (See Carter-Allen Jewelry Co. v. Overstreet, Liles v. Barnhart, Liles v. Producers Oil Co., and Martin v. Texas Co., supra) that an action to recover the value of property wrongfully taken is one ex delicto, it is barred by the prescription of one year.

The point is not well taken. The primary redress sought by plaintiff is the return of his property and he correctly prays, in the alternative, that, if the defendants cannot return it, then they should be condemned to reimburse him for its value. This alternative demand does not and cannot have the effect of changing the nature and character of plaintiff's suit which is based upon a quasi contract. In electing to proceed ex contractu, plaintiff had the right to seek restitution of his property. Of course, if the plaintiff had known at the time he filed his suit that the defendants had sold or otherwise disposed of his property, he could have prayed only for judgment against them for the price they re-

ceived for it. Such an action is known as one for money had and received, which is authorized by Article 2313 of the Code, providing that:

"If he who has received bona fide, has sold the thing, he is bound to restore only the price of the sale.

"If he has received in bad faith, he is bound besides this restitution to indemnify fully the person who has paid."

The facts of this case disclose to our .satisfaction that plaintiff is without knowledge as to what disposition, if any, the defendants have made of his property. Under such circumstances, he was unable to bring a suit for money or property had and received and therefore he could ask only that it be returned to him or, in .the alternative, that the defendants be condemned to reimburse him for its value. Compare Bell Lumber Co. v. Stout, supra, where the plaintiff's suit for the recovery of logs unlawfully taken or, in the alternative, for their value, was held to be an action ex delicto for damages and barred by the prescription of one year, where it appeared that he knew, long before the institution of the suit, that the logs had been converted into timber and were not in the possession of the defendant.

█ The fact that the plaintiff has, in his supplemental petition, alleged on information and belief that the defendants used his property in payment of the purchase price of a certain piece of real estate, which had been bought by Mrs. Cohen and subsequently transferred by her to. plaintiff's wife, did not operate as a waiver

of his right to recover on his main demand which is for the return of his property unlawfully taken by the defendants. . The allegation was denied by the defendants, and the plaintiff was unable to submit proof in support of it. This failure to sustain it by proof cannot serve to the advantage of the defendants and preclude plaintiff in his right to have his property returned to him.

█ It is obvious that, in cases of this kind, the plaintiff is not, in most instances, in a position to know whether the defendant has retained the possession of his property or whether he has disposed of it. Hence, the burden rightly falls upon the shoulders of the defendant, if he seeks to avoid a judgment for the return of the property, to produce proof to show what disposition, if any, he has made of it. And this is particularly so, in a case like this, where the defendants have steadfastly maintained that they never, at any time, had the possession of the property sued for. If, under such pleadings, the evidence submitted warrants a finding that the defendants did unlawfully take possession of the property, then, by common justice, they ought to be condemned not only to return the property but, also, to pay the plaintiff a sum equivalent to its value in the event they cannot produce it. That relief of this kind is authorized by law is plainly indicated by Article 2312 of the Civil Code, which declares:

"If the thing unduly received is an immovable property or a corporeal movable, he who has received it, is bound to restore it in kind, if it remain, *or its value, if it be destroyed or injured by his fault;* he is

even answerable for its loss by fortuitous event, if he has received it in bad faith." (Italics ours.)

■ Thus we see that the defendant is liable in quasi contract for the value of the thing if he is unable to restore it to its owner because of its destruction or injury through his fault. In addition, we think that the language used in Article 2312 contemplates and presupposes that the burden is upon the unlawful possessor to account for the thing and that, in case he fails to do so, he should be ordered to return it or to pay the owner for its value.

In Tyler v. Walt, 184 La. 659, 167 So. 182, 184, is found a situation quite similar to the case at bar. There, the plaintiff sued Walt, the liquidators of the Hibernia Bank & Trust Company and another to recover certain bonds, or alternatively, the sum of $7,000 representing the price of the bonds, which he alleged he had entrusted to Walt, as manager of a branch of the bank, for safe keeping in the vault of the bank and which were converted by Walt to his own use by pledging them to the bank as collateral security for a personal loan. One of the points raised by the defendants in resisting liability was that plaintiff's action was one in tort and was therefore barred by the prescription of one year. In answering this contention adversely to the defendants, we said:

"The trial judge overruled the plea on the ground that plaintiff's action was predicated on a contractual obligation and not on a tort. Defendants have apparently acquiesced in the ruling, since they have not presented in this court any argument in support of their plea. For our part, we think the ruling was correct."

After disposing of the other defenses made by Walt and the Hibernia Bank, judgment was rendered against them in solido, ordering them to deliver the plaintiff the bonds fraudulently taken or, in the alternative, to pay plaintiff the amount of the principal and interest of the bonds. The prayer of plaintiff's petition in Tyler v. Walt is practically identical with the prayer of the petition now under consideration and we hold that, here, as there, the suit is founded on a contractual obligation. It therefore follows that the plea of prescription of one year was erroneously sustained by the court below.

■ We next consider the exceptions of no right or cause of action filed by the defendants. In so far as the exception of Mrs. Cohen, plaintiff's mother-in-law, is concerned, it suffices to say that it is without merit as plaintiff has set forth facts in his petition which clearly disclose a valid legal complaint against her.

The exception filed by plaintiff's wife is not so easily disposed of. This exception is founded on the premise that our law does not permit a husband to sue his wife (except for a separation from bed and board or a divorce) during the existence of the marriage. In support of this contention, counsel for the wife depend upon Article 105 of the Code of Practice and the cases of Hawthorne v. Mrs. Clark, 39 La.Ann. 678, 2 So. 561, and Nuss v. Nuss, 112 La. 265, 36 So. 345.

Contra, counsel for the plaintiff maintain that there is no prohibition contained in

either the Civil Code or the Code of Practice against a husband suing his wife, during the existence of the marriage, for the return of his separate property which she has unlawfully taken from him and they say that plaintiff's right to sue is fully sustained by the following authorities: Article 1 of the Code of Practice; Alexander v. Alexander, 12 La.Ann. 588, State ex rel. Lasserre v. Michel, 105 La. 741, 30 So. 122, 54 L.R.A. 927, State v. Dunn, 148 La. 460, 87 So. 236, and by Part III, Title II, Law 5, Las Siete Partidas.

An examination of the cases relied upon by opposing counsel reveals that this court, while recognizing that a husband has the right to sue his wife in certain instances, has refrained from reaching a definite conclusion as to whether such a right exists in all cases.

In Alexander v. Alexander, suit was brought by the husband against his wife as executrix and universal legatee of a succession, claiming that the succession was indebted to him for services rendered to the deceased. In permitting him to prosecute the action, the court laid considerable stress upon the fact that the defendant was sued in her representative capacity as executrix. However, in the course of the opinion, it was said:

"There is no law which prohibits the husband from instituting such a suit, and ex necessitate rei, the action must lie to prevent a failure of justice."

In Hawthorne v. Mrs. Clark, it appeared that the defendant's husband, Clark, had sold to her a piece of real estate previous

to their marriage. Thereafter, they were separated and the husband made a simulated sale of the property to Hawthorne in order that the latter might sue Mrs. Clark for the recovery of the property and return it to him. That the transaction was made with that understanding was admitted by both Hawthorne and Clark on the trial of the case. Under these circumstances, it was concluded that the plaintiff had no interest whatever in the suit and this court said that, having so concluded, it was unnecessary to discuss the abstract question presented, whether, if the sale by Clark to Hawthorne had been real, Hawthorne would have had any better right to maintain the suit than Clark himself.

In Nuss v. Nuss, which was an action by the husband against his wife and her sister to annul two acts of sale as simulations, this court disclaimed any intention to pass upon the question of the right of the husband to sue his wife, stating [112 La. 265, 36 So. 348]:

"We are not called on in this case to discuss and pass upon the question as to whether, as a general proposition or rule, a husband is not authorized to institute judicial proceedings against his wife, nor whether, if such was the case, the court could or should of its own motion dismiss a suit, where this had been attempted, wherein the parties themselves raised no such issue."

State ex rel. Lasserre v. Michel was a case in which the husband brought action against his wife to compel her to give him possession of their child and had obtained a writ of habeas corpus. The Dis-

trict Judge ruled that, under Article 105 of the Code of Practice, the husband was denied the right to institute suit against the wife. This court, however, reversed the decree and held that, inasmuch as it was a habeas corpus proceeding, relief should not be denied on the ground that the husband was without right to institute and maintain an action against his wife.

In State v. Dunn, the husband, appearing on the relation of the State, filed a mandamus suit to compel the Recorder of Mortgages to cancel an inscription on his records of a judgment of alimony against the relator rendered by the Supreme Court of the State of New York in a suit which had been brought by his wife against him for a separation from bed and board. The wife was made a party defendant to the action. One of the grounds upon which the relief prayed for was resisted was that Mrs. Macheca, the wife, could not be sued by her husband during the existence of the marriage. The lower court, was of the opinion that the husband was barred by Article 105 of the Code of Practice from bringing an action of that character against his wife. On appeal, this court declared that Article 105 merely forbids the wife to sue her husband (except in certain cases) and that it does not in any way affect the right of the husband to institute suit against his wife. Accordingly, it was concluded that the judgment of the District Court was incorrect.

That case, however, cannot be pointed to as authority for plaintiff's contention that a husband has a right to sue his wife in an action such as this for the decision is based on the ground that the suit was primarily against a public official to compel him to cancel an inscription bearing upon the property of the husband and it was held that, under those circumstances, the marital relation existing between the complainant and his wife, who was the other party defendant, could not deprive him of his right of action. In fact, we specifically refrained from deciding whether the marital relation should, under some circumstances, prevent a man from suing his wife, stating: "Sufficient for the day is the case before us."

While the foregoing authorities cannot be regarded as furnishing a solution to the broad question (i. e. whether a husband should be permitted to sue his wife in all cases), they do, at least, exhibit a tendency on the part of this court to maintain such a suit where a denial of the right would result in a miscarriage of justice. See Alexander v. Alexander, State ex rel. Lasserre v. Michel, and State v. Dunn, supra. Moreover, the opinion of the court in State v. Dunn is an adequate answer to the contention made by counsel for the defendants that the husband is prohibited from suing his wife by Article 105 of the Code of Practice. That article, according to its plain provisions as interpreted in the Dunn case, applies only to the wife's right to sue her husband and forbids her to maintain an action against him except for the causes specified therein.

Under Article 1 of our Code of Practice, the right is given to every person to claim what is due or belongs to him. The right

accorded by this article is subject, of course, to certain limitations. In Chapter 5 of Title 1 of the Code of Practice, Articles 102 through 113, it is prescribed that certain persons—i. e. minors, interdicts and married women—may not institute suit except in certain instances and for special causes. However, there is no prohibition to be found either in the Civil Code or in the Code of Practice against a husband maintaining a suit against his wife. But, notwithstanding the absence of such provisions in our codal laws, there are certain cases in which a right of action on the part of the husband must be denied. For instance, it is well settled that a husband will not be permitted to sue his wife during marriage where the object of his action is the recovery from his wife of his interest in property belonging to the community. This rule is recognized by this court in the recent case of Carter v. Third District · Homestead Ass'n, 195 La. 555, 197 So. 230, wherein the cases of Smith v. Reddick, 42 La.Ann. 1055, 8 So. 539, and Falconer v. Falconer, 167 La. 595, 120 So. 19, are cited with approval. The reason for this rule is that, as long as the community or partnership exists, an accounting between the spouses is not permissible.

The instant suit is obviously distinguishable from that of Carter v. Third District Homestead Ass'n in that, here, the husband is not seeking to recover his share of the community property which has been used by the wife in acquiring other property in her own name but it is an action by the husband for restitution by his wife of his

separate property which she has unlawfully taken from him.

Suits of this character are clearly recognized by Las Siete Partidas, which is one of the sources of law upon which our Code of Practice is based. In the translation of the Partidas by Lislet and Carlton, Part III, Title II, Law 5, it is said:

"Husband and wife form a union, consecrated by the Deity, in which there should ever reign perfect love and harmony. The ancient sages, have therefore thought proper to give to the husband the administration and use of the wife's estate, to supply his wants, when he stood in need, on condition to furnish her with what was necessary, according to her fortune and rank. And though, notwithstanding, one of them should take something belonging to the other, *neither he from whom it was taken, nor his heirs, could complain against the other as for a theft, though they might sue for the restitution or value of the thing.*" (Italics ours.)

While there may be cases where the court would be justified, for reasons based upon the public policy, in refusing to permit a husband to sue his wife during the marriage, we do not see that there is a cause for adopting such a conclusion in the instant matter. It is certain that such a proposition could not be sustained in this case on the ground that the suit would disturb the tranquility of the home for, here, it appears from the evidence that the spouses are not only living separate and apart but that the wife, shortly after the occurrences which gave rise to this suit, entered into a bigamous marriage with one

Scholnick and was later convicted of that offense. Under such circumstances, it would be highly inequitable and unjust to say that to permit the plaintiff to maintain this suit would be contrary to the public policy of this State. We therefore hold that the exception of no right or cause of action was properly overruled by the trial judge.

Having disposed of the points of law involved herein, we finally address our attention to the merits of the case. The Commissioner of the District Court, who saw and heard the witnesses, was convinced that the testimony submitted on behalf of the plaintiff in support of the charges made in the petition clearly preponderated over the abject denials of the defendants. He frankly stated in his report that he was not at all impressed with the defendants' testimony, whereas the evidence of the plaintiff was corroborated by many circumstances which persuaded him that plaintiff was telling the truth. The report of the Commissioner on the facts of the case was fully concurred in by the trial judge. For our own part, a careful examination of the record satisfies us that plaintiff has established the following facts:

That, shortly after plaintiff's marriage, his wife, acting in concert with her mother, conspired and schemed to take his money and jewelry from him; that they knew that he carried considerable money and articles of jewelry on his person; that they committed the theft and robbery of his cash and jewelry at the times and at the place alleged in the petition; that the stolen jewelry and cash were plaintiff's separate

property, having been acquired by him prior to his marriage, and that the jewelry was well worth the value plaintiff places upon it.

With respect to the diamond ring, valued at $600, which plaintiff alleges he lent to his wife upon assurances from her that it would be immediately returned and which the defendants contend he gave to his wife as a present in prospect of marriage, we likewise hold that the proof preponderates in plaintiff's favor and we find that the evidence warrants the conclusion that his wife, acting in concert with her mother, borrowed the ring from plaintiff with the intention of converting it to the use of her mother and herself.

For the reasons assigned, the judgment appealed from is annulled, avoided and reversed and it is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Benson Kramer, and against the defendants, Bessie Freeman, widow of Reuben Cohen, and Jennie Cohen, wife of Benson Kramer, in solido, condemning the defendants to return to the plaintiff the following described property: The sum of $585 in cash; one 17 jewel, 14 carat gold Waltham watch; one 14 carat gold chain weighing approximately 20 pennyweights; one 10 carat gold locket, weighing approximately 20 pennyweights, containing one diamond; one 18 carat white gold man's ring, containing one large diamond slightly less than two carats; one solid platinum lady's diamond ring containing approximately 50 small diamonds; one 15 jewel platinum lady's watch encrusted with 40 small diamonds; one solid platinum

diamond ring containing one large diamond of approximately one and one-quarter carats, 16 small diamonds and two blue stones; or, in the alternative, to pay to the plaintiff the sum of $2,970, representing the value of the above-described jewelry and cash, with legal interest thereon from judicial demand until paid, and for all costs.

Reversed.