904 F.2d 988
 Fed. Sec. L. Rep. P 95,340, 17 Fed.R.Serv.3d 208,
RICO Bus.Disp.Guide 7512
 Victoria A. Carleton JOLLEY, et al., Plaintiff-Appellees,
Cross-Appellants,
v.
James WELCH, Defendant-Appellant, Cross-Appellee.
Valerie W. MILLS, Plaintiff-Appellee, Cross-Appellant,
v.
PAINE WEBBER JACKSON & CURTIS, INC., Defendant-Appellant,
Cross-Appellee.
 No. 88-3814.
 United States Court of Appeals,
Fifth Circuit.
 July 5, 1990.
 
 George C. Freeman, III, Phillip A. Wittmann, Stephen H. Kupperman, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for Paine Webber Jackson & Curtis, Inc.
 James E. Welch, Metairie, La., pro se.
 Frank E. Massengale, Liskow & Lewis, New Orleans, La. for Victoria A. Carleton Jolley et. al.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before REAVLEY, JONES, and DUHE, Circuit Judges.
 DUHE, Circuit Judge:
 
 
 1
 All parties appeal a judgment awarding damages on claims for improper handling of investments. We affirm.
 
 
 2
 The plaintiffs are eight individuals who received investment services from Paine Webber. James Welch was the Paine Webber broker who handled plaintiffs' accounts. In 1985 each plaintiff filed a separate lawsuit against Paine Webber and Welch for claims relating to investment services performed from 1981 to 1983. The plaintiffs alleged that Paine Webber and Welch had purchased and sold stock, traded on margin, and traded options without their authorization, and that they had invested in speculative and unsuitable stocks, churned the plaintiffs' accounts, failed to provide "options disclosure documents" to the plaintiffs, and forged arbitration agreements. The plaintiffs claimed violations of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78a et seq., the Louisiana Civil Code, and rules of the National Association of Securities Dealers and the New York Stock Exchange. The plaintiffs also sought civil remedies under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sec. 1964.
 
 
 3
 The district judge consolidated the cases and Paine Webber moved to submit the claims against it to an arbitrator. The judge referred Paine Webber's motion to a magistrate for an evidentiary hearing on the alleged forgery of the arbitration agreements. After that hearing the district judge noted that plaintiffs, except Mills, had executed arbitration agreements with Paine Webber. The judge therefore stayed the claims of all plaintiffs except Mills against Paine Webber pending arbitration. The plaintiffs appealed the stay to this Court, which determined that it lacked jurisdiction. Jolley v. Paine Webber Jackson & Curtis, 864 F.2d 402 (5th Cir.), opinion supplemented, 867 F.2d 891 (5th Cir.1989).
 
 
 4
 A jury trial was held on the claims of all plaintiffs against Welch and Mills' claims against Welch and Paine Webber. The jury found for the plaintiffs on the federal securities law and state law claims, but exonerated both defendants on the RICO claims. The jury awarded damages of roughly $251,000 against Welch in favor of seven of the plaintiffs and $23,000 against both defendants in favor of Mills.Instruction on Mental Anguish
 
 
 5
 The plaintiffs were refused an instruction on mental anguish which would have informed the jury that, if they found in favor of the plaintiffs on the Louisiana fraud claims, they could award damages for mental anguish suffered as a result of the defendants' fraud. The plaintiffs argue that they were improperly denied the instruction, because the jury found in their favor on two tort-based Louisiana claims and Article 2315 of the Civil Code permits damages for mental anguish for such claims.
 
 
 6
 Louisiana law does not presently permit an award of damages for mental anguish in cases of this type. A prior panel of this Court upheld the dismissal of an emotional distress claim in a similar case on the ground that Louisiana law requires a nonpecuniary interest to be the cause for the distress. Stephenson v. Paine Webber Jackson & Curtis, Inc., 839 F.2d 1095, 1101 (5th Cir.), cert. denied, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 328 (1988). Dismissal was warranted because the claims were grounded, as in the present case, both in tort and in contract, and in contract cases the Civil Code limits damages for nonpecuniary loss to contracts "intended to gratify a nonpecuniary interest." La.Civ.Code art. 1998. Admittedly, the law is far from certain. In one case, for example, the Louisiana Supreme Court permitted an award of damages for mental anguish in an action for conversion of stock. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756, 762 (La.1985). No contract was at issue in that case, however. Because Quealy was rendered prior to the decision of this Court in Stephenson, and because no intervening Louisiana decision has given further guidance, we defer to the district court's determination of Louisiana law as it is in a better position to ascertain the law of the state in which it sits. Stephenson, 839 F.2d at 1101 n. 19; Edwards v. State Farm Ins. Co., 833 F.2d 535, 541 (5th Cir.1987).
 
 RICO
 
 7
 The plaintiffs moved for judgment notwithstanding the verdict on their RICO claims and the motion was denied. The plaintiffs argue that of the four elements under 18 U.S.C. Sec. 1962(c),[1] three are undisputed and the fourth was established beyond dispute through other findings determined in the plaintiffs' favor. In reviewing a ruling on a motion for judgment notwithstanding the verdict this Court considers the entirety of the evidence, and there must be substantial evidence opposed to the motion in order for the case to be submitted to the jury. Boeing Company v. Shipman, 411 F.2d 365, 374 (5th Cir.1969)(en banc).
 
 
 8
 The RICO interrogatories submitted to the jury inquired generally "Do you find by a preponderance of the evidence that [the defendants] violated the Racketeering [sic] Influenced [and] Corrupt Organizations Act ... ?" In a similar manner the SEA interrogatories inquired "Do you find by a preponderance of the evidence that [the defendants] violated Section 10(b) of the Securities Exchange Act ... ?" Given the general nature of these interrogatories this Court must essentially determine whether the record lacks evidence of any RICO element or whether the jury was entitled to reject substantial evidence of any such element. The defendants correctly point out that the jury might reasonably have concluded that a single trade or a single act of "churning" constituted the section 10(b) violation. In addition, the jury was certainly entitled to conclude that any predicate acts committed by the defendants lacked a sufficient relationship with one another to constitute a "pattern" or that the plaintiffs had failed to prove continuity in the racketeering activity or its threat. See H.J. Inc. v. Northwestern Bell Tel. Co., --- U.S. ----, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989); Sedima, S.P.R.L. v. Imprex Co., 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985); Smith v. Cooper/T. Smith Corp., 886 F.2d 755, 756 (5th Cir.1989).
 
 
 9
 The plaintiffs alternatively argue that the jury was improperly instructed on RICO and the case should therefore be remanded. If the instructions, considered as a whole, are comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury, the charge will be deemed adequate. Armco Indus. Credit Corp. v. SLT Warehouse Co., 782 F.2d 475, 483 (5th Cir.1986). We do not believe the jury was confused in any respect the plaintiffs mention. The jury was not instructed that the plaintiffs must prove a "racketeering injury," nor could they have been confused into believing that the defendants must be associated with organized crime. Any confusion in the charge between single acts of fraud furthered by multiple mailings and separate mailings in furtherance of a scheme to defraud is minimal and does not render the instruction as a whole inaccurate or confusing.
 
 
 10
 The plaintiffs next argue that the district judge erroneously excluded evidence that was crucial to the RICO claims. An audit of accounts handled by Welch was prepared for Paine Webber and resulted in a brief memorandum describing several irregularities, some of which occurred in the accounts of persons not associated with this lawsuit. The district judge concluded that the memorandum was cumulative and prejudicial. We review for abuse of discretion, Jon-T Chemicals, Inc. v. Freeport Chemical Co., 704 F.2d 1412, 1417 (5th Cir.1983), and find no such abuse in the judge's ruling. The references to the accounts of other individuals posed a sufficient risk of prejudice to warrant the exclusion of the memorandum. See Johnson v. William C. Ellis & Sons Iron Works, Inc., 604 F.2d 950, 958 (5th Cir.1979)(district judge properly excluded as prejudicial a motion picture of a cotton compress in operation, where only a small part of the picture portrayed the portion of the compress at issue), reh'g granted in part on other grounds, 609 F.2d 820 (5th Cir.1980).
 
 Section 9
 
 11
 The plaintiffs sought to hold Paine Webber and Welch liable under Section 9 of the Securities Exchange Act of 1934 for Welch's failure to provide the plaintiffs with "options disclosure documents."[2] The district judge granted the defendants' motion for directed verdict on the section 9 claims, concluding that section 9 does not govern manipulative practices that do not directly affect the market or purchase price of a security:
 
 
 12
 Mere failure to provide a disclosure document will not establish liability or damages under section 9. Other elements such as santa [sc. scienter] and the effect on market price also must be present. To the extent that rule 9b-1 purports to state to the contrary, it is invalid.
 
 
 13
 The judge found that the plaintiffs had neither pleaded nor proved that the manipulative practices had artificially affected the market price of any security or that they had purchased any security at a price affected by the manipulative practices.
 
 
 14
 The plaintiffs argue that an action for failure to provide an options disclosure document does not require proof of effect on market or purchase price. This Court has not addressed this issue specifically in the case of options disclosure documents, but has sufficiently answered the argument in a related case. See Chemetron Corp. v. Business Funds, Inc., 682 F.2d 1149 (5th Cir.1982), vacated and remanded on other grounds, 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 adhering to prior opinion on remand, 718 F.2d 725 (5th Cir.), reh'g en banc ordered, 718 F.2d 725, 730 (5th Cir.1983)(settled prior to rehearing en banc).[3] The Court noted that a section 9(a) claim requires proof of effect on the purchase price, and that in the case before it relief under section 9(a) was foreclosed by the jury's failure to find such effect. Id. at 1157. The requirement cannot properly be limited to claims under section 9(a) because section 9(e), granting a private cause of action under all subdivisions of section 9, clearly permits an action only in favor of one "who shall purchase or sell any security at a price which was affected by any such act or transaction...." 15 U.S.C. Sec. 78i(e); Chemetron, 682 F.2d at 1162 n. 21. Nor may the scope of Rule 9b-1 exceed the power granted to the Commission under the statute. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 213-14, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976). The district judge therefore properly granted the motion for directed verdict for the plaintiffs' failure to plead and prove a necessary element of their section 9 claim.
 
 Unsuitability
 
 15
 The plaintiffs requested an instruction on "unsuitability" as defined by certain rules of the New York Stock Exchange and the National Association of Securities Dealers. The rules require generally that a broker recommend a purchase or sale only after determining that the recommendation is suitable to the customer, and that he use due diligence to learn essential facts regarding the customer.[4] The requested instruction would have informed the jury that unsuitability may be deemed a discrete violation of Rule 10b-5. The district judge declined to give the instruction, and instead charged the jury that the NYSE and NASD rules may be taken into account as a factor in determining whether the defendants had churned the plaintiffs' accounts.
 
 
 16
 The propriety of the charge as given is not at issue; a prior panel of this Court held that a jury was entitled to consider the NYSE and NASD rules in determining whether the plaintiff's account had been excessively traded. Miley v. Oppenheimer & Co., 637 F.2d 318, 333 (5th Cir.1981). In the present case the plaintiffs challenge the district judge's refusal to give their proposed instruction. Because the plaintiffs prevailed on their section 10(b) claims, and because remand is not required on any other ground, it is unnecessary to address the existence of a private cause of action under the NYSE and NASD rules.
 
 Arbitration
 
 17
 An issue arose regarding the possible forgery of signatures on the plaintiffs' Client Option Agreement and Qualification Forms. These agreements provided that controversies arising out of any transactions under the agreements would be settled by arbitration. The forgery issue was referred to a magistrate "for an evidentiary hearing on which, if any, of the original arbitration agreements bear legitimate signatures, and which, if any, are forgeries." The magistrate noted that Paine Webber had not produced into evidence an agreement relating to Mills and that it had therefore not met its burden of proof on the issue of Mills' waiver of her right to have her claims submitted to a jury. The district court agreed, stating that Paine Webber had the burden of proving the existence of a valid arbitration agreement.
 
 
 18
 Paine Webber argues that the district court erred in referring the forgery issue to a magistrate, because under the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq., a claim of fraud in the inducement of the contract generally, as opposed to fraud in the inducement of the arbitration clause, may not be passed on by a federal court. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1805-06, 18 L.Ed.2d 1270 (1967). Paine Webber also argues that Mills had the burden of proving forgery.
 
 
 19
 The Federal Arbitration Act requires a judge to refer a matter to arbitration "upon being satisfied that the issue involved ... is referable to arbitration under [a written arbitration agreement]." 9 U.S.C. Sec. 3. "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). Paine Webber declined to introduce a Client Option Agreement purporting to bear Mills' signature, and the district court accordingly had no opportunity to reach even its "first task." The district court therefore committed no error in declining to refer Mills' claims against Paine Webber to arbitration.
 
 Severance
 
 20
 Paine Webber argues that the district court abused its discretion in refusing to sever Mills' claims from the claims of the remaining plaintiffs. Paine Webber asserts, without citing any facts in support, that Mills sought consolidation in order to use "unrelated evidence" of Welch's acts against the other plaintiffs and thereby bolster her case against Paine Webber. "The fact that a defendant may be involved in one case and not the other is not sufficient to avoid consolidation." St. Bernard Gen. Hospital, Inc. v. Hospital Serv. Ass'n, 712 F.2d 978, 989 (5th Cir.1983), cert. denied, 466 U.S. 970, 104 S.Ct. 2342, 80 L.Ed.2d 816 (1984). In addition, Mills correctly points out that all plaintiffs alleged the same acts committed by the same broker during roughly the same period of time. See Bottazzi v. Petroleum Helicopters, Inc., 664 F.2d 49, 50-51 (5th Cir.1981)(where similar claims in separate complaints justified consolidation, despite that fact that one party was named as a defendant in only one of the suits). The district judge therefore did not abuse his discretion in declining to sever Mills' claims from the remaining claims.
 
 Damages
 
 21
 Paine Webber moved for judgment notwithstanding the verdict or alternatively new trial or remittitur on the issue of damages, challenging the jury's reliance on the calculation of damages offered by the plaintiffs' expert. The district judge denied the motion, concluding that the expert's report was properly admitted and the jury was properly instructed on the measure of damages. Paine Webber now asserts there is no evidence to support Mills' award and that the judge erred in denying the motion. Paine Webber argues that the calculation performed by the plaintiffs' expert erroneously included both proper and improper transactions, because the calculation subsumed all transactions that took place after January 1982 and Mills raised no complaint against many of the stock trades occurring after that date. Paine Webber believes that Mills' award should be reduced to approximately $14,000, representing losses on challenged options trades alone.
 
 
 22
 The record supports the jury's award. Paine Webber's assertion that Mills had no complaint against many of the 1982 stock trades does not accord with the import of Mills' testimony. Her complaint alleged that the defendants had made unsuitable trades in her account beginning in 1982. At the time of trial she was seventy-one years old. She testified that Welch had never informed her of the importance of reviewing her monthly statements to check for accuracy. She said she understood the statements in a general way but not as a "connoisseur." She made it clear to Welch that she did not want to undertake excessive trading risks, and believed he would take the proper precautions with respect to her account. When asked if Welch at any time had failed to bring to her attention anything appearing in a monthly statement, she replied "No, I really was not aware of that, I don't know that it did not happen but I was not aware of it." While Mills further testified that she had no concern about Welch's performance prior to 1983 and no complaint until she saw her account diminishing in value, these statements clearly refer to her concerns at the time the events were taking place. The statements in no way reflect a concession that Welch handled her account properly during 1982. To the contrary, the jury was entitled to conclude that, in view of Mills' age and financial expectations, Welch's stock trades during 1982 were unsuitable and were undertaken to generate commissions.[5] Accordingly, substantial evidence supports the denial of the motion for judgment notwithstanding the verdict, and the district judge did not abuse his discretion in denying the alternative motions for new trial or remittitur. Sam's Style Shop v. Cosmos Broadcasting Corp., 694 F.2d 998, 1006 (5th Cir.1982); Boeing Company v. Shipman, 411 F.2d 365, 374 (5th Cir.1969)(en banc).
 
 Welch's Appeal
 
 23
 Welch argues that the district court erred in refusing to instruct the jury on the plaintiffs' "constructive notice" of the facts underlying their causes of action for purposes of the defenses of waiver, laches, ratification, and estoppel. We have reviewed the authorities cited by Welch and find no support for his argument. Welch also argues that the district judge erroneously declined to instruct the jury regarding several factors bearing on the fiduciary duty owed by Welch to the plaintiffs, factors which, according to Welch, determine the existence of the duty. Welch incorrectly relies on Romano v. Merrill Lynch, Pierce, Fenner & Smith, 834 F.2d 523 (5th Cir.1987), cert. denied, 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988), which does not state that the existence of a fiduciary duty is "fact-based" as Welch asserts; rather, the Court held that "a broker does owe his client a fiduciary duty, but, on these facts, no duty was breached." Id. at 530 (emphasis added).
 
 
 24
 Welch also argues that the district court erred in several respects in refusing to grant his motion for judgment notwithstanding the verdict in its entirety. He first argues that prescription bars many of the plaintiffs' claims because the plaintiffs regularly received monthly statements notifying them of the details of many of the disputed trades. The jury found that all plaintiffs had timely filed their claims under section 10(b), Louisiana Blue Sky laws, and Louisiana fraud and misrepresentation laws, and Welch recites no facts to warrant setting aside the jury's verdict. In addition, none of the cases cited by Welch indicates that receipt of monthly statements alone would begin the running of limitations.
 
 
 25
 Welch also argues that the district court erred in applying a ten-year prescriptive period to the plaintiffs' breach of fiduciary duty claims instead of the one-year period for delictual actions set forth in La.Civ.Code art. 3492. In order to fall within the ten-year prescriptive period of article 3499, the plaintiffs' complaints must allege the breach of a contractual or quasi-contractual obligation. "[T]he character which a plaintiff gives his pleadings and the form of his action govern the prescription available." Kramer v. Freeman, 198 La. 244, 3 So.2d 609, 612 (1941). The complaints in this case allege that the defendants' acts constitute "breach of fiduciary duty ... for which they are liable under Articles 2315, 2316, and 2317 of the Louisiana Civil Code." The quoted Code articles do not describe contractual or quasi-contractual obligations, and the pleadings cannot otherwise be construed to make out such claims. See Fidelity & Deposit Co. v. Smith, 730 F.2d 1026, 1033 (5th Cir.1984). Accordingly, the district court erred in permitting the longer prescriptive period as to the breach of fiduciary duty. Welch was found liable, however, under Sec. 10(b), Louisiana Blue Sky laws, fraud, and negligent misrepresentation. These findings are unaffected by the prescription issue and independently support the jury's award against Welch. The error was therefore harmless.
 
 
 26
 The remainder of Welch's arguments have been sufficiently answered under Paine Webber's appeal, above.
 
 
 27
 The judgment is AFFIRMED.
 
 
 
 [1]
 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt
 18 U.S.C. Sec. 1962(c).
 
 
 [2]
 Section 9(b) generally prohibits any person from contravening regulations of the SEC by engaging in certain manipulative practices in the trading of securities. 15 U.S.C. Sec. 78i(b) (West 1981). Section 9(e) permits an injured party to sue for violations of Section 9(b). Id. Sec. 78i(e). Under the authority of Section 9 the SEC issued Rule 9b-1, which requires broker-dealers to furnish their customers with an options disclosure document before accepting an order for the purchase or sale of an option contract subject to the disclosure requirement. 17 C.F.R. Sec. 240.9b-1 (amended by Amendment to Rule 9b-1, 51 Fed.Reg. 14980 (1986)). The document generally must include information regarding risk, the meaning of terms used, and the mechanics of trading
 
 
 [3]
 We recognize, of course, that the 1982 Chemetron opinion carries no precedential force, as it was vacated by the Supreme Court and on remand the panel opinion was ordered reheard en banc. See Hughes v. Santa Fe Int'l Corp., 847 F.2d 239, 242 (5th Cir.1988). Nevertheless, the requirement of Sec. 9(e) was never questioned in Chemetron 's subsequent history, but on the contrary was a predicate to the 1983 panel decision. See Chemetron, 718 F.2d at 728
 
 
 [4]
 NYSE Rule 405, CCH New York Stock Exchange Guide Sec. 2405 ("Know Your Customer Rule"); NASD Manual, article III, Sec. 2, CCH NASD Manual Sec. 2152 ("Suitability Rule")
 
 
 [5]
 The verdict form submitted to the jury required the jury to assess the plaintiffs' damages if they found against the defendants on any claim